**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

| | |
|---|---|
| JARED JOHNSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COMMONWEALTH FEDERAL CREDIT UNION,<br><br>Defendant. | Case No. 3:25-cv-42-GFVT |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT COMMONWEALTH FEDERAL CREDIT UNION'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 5

III. ARGUMENT ..... 6

A. Johnson Lacks Article III Standing Because He Alleges Neither a Concrete Injury Nor a Plausible Causal Connection to CCU. ..... 6

B. Plaintiff Fails to State a Claim. ..... 11

1. Count I Fails Because Johnson Does Not Plausibly Allege Breach, Causation, or Cognizable Injury. ..... 11

2. Count II Fails Because Johnson Does Not Identify a Valid Kentucky Negligence-Per-Se Predicate. ..... 15

3. Count III Fails Because Johnson Does Not Plead a Highly Offensive Intrusion into a Matter in Which Plaintiff Had a Reasonable Expectation of Privacy ..... 15

4. Count IV Fails Because Johnson Does Not Plead an Enforceable Promise, Breach, or Resulting Contract Loss. ..... 18

5. Count V Fails Because Johnson Does Not Allege a Benefit He Directly Conferred on CCU. ..... 20

6. Count VI Fails Because Johnson Did Not Deliver Property to CCU for Safekeeping and Return. ..... 22

7. Count VII Fails Because Johnson Does Not Allege an Ascertainable KCPA Loss Caused by the Challenged Practice. ..... 23

8. Counts VIII Through X Fail Because the Alleged Communications Were Directed to a Consenting Party and Each Count Omits Facts Necessary to Establish the Statutory Elements. ..... 24

a. The Same Party-and-Consent Exception and Premise Defeats All Three ECPA Counts. ..... 24

b. The Federal Wiretapping Claims All Fail Because Johnson Does Not Identify Protected Contents or a Contemporaneous Acquisition. ..... 26

c. Count IX Independently Fails Because CCU Is Not a Public Electronic Communication Service Provider and No Contents

Were Divulged While in Transmission........................................ 29

d. Count X Independently Fails Because CCU Is Not a Public Electronic Communication Service Provider and No Contents Were Held in Electronic Storage. ................................................ 30

9. Count XI Fails Because No Computational Gate Was Bypassed and No Qualifying CFAA Loss Is Alleged. ......................................................... 31

10. Count XII Fails Because Johnson Alleges Only Electronic Website Activity and CCU Was a Consenting Party. ............................................ 32

IV. CONCLUSION........................................................................................... 33

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abu v. Dickson*,
107 F.4th 508 (6th Cir. 2024) ..... 31

*Adler v. Community.com*,
2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ..... 28

*Arndt v. Gov't Emps. Ins. Co.*,
750 F. Supp. 3d 518 (D. Md. 2024) ..... 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 10, 11, 28

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ..... 25

*Barnett v. Mercy Health Partners-Lourdes, Inc.*,
233 S.W.3d 723 (Ky. App. 2007) ..... 18

*Baysal v. Midvale Indemnity Co.*,
78 F.4th 976 (7th Cir. 2023) ..... 9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..... 11

*Bowens v. Aftermath Entertainment*,
254 F. Supp. 2d 629 (E.D. Mich. 2003) ..... 25

*Brahm v. Hospital Sisters Health System*,
No. 23-CV-444-WMC, 2026 WL 1194751 (W.D. Wis. May 1, 2026) ..... 8

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) ..... 25

*Christensen v. ATS, Inc.*,
24 F. Supp. 3d 610 (E.D. Ky. 2014) ..... 15

*Cobbs v. PetMed Express, Inc.*,
No. 25-8045-CIV, 2026 WL 905375 (S.D. Fla. Jan. 14, 2026) ..... 17

*Commonwealth of Kentucky v. Marathon Petroleum Co., LP*,
191 F. Supp. 3d 694 (W.D. Ky. 2016) ..... 20, 21

*Cook v. GameStop*,
148 F.4th 153 (3d Cir. 2025) ..... 7

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023), *aff'd as modified*, 148 F.4th 153 (3d Cir. 2025) .......... 4, 17, 26

*Craighead v. E.F. Hutton & Co.*,
899 F.2d 485 (6th Cir. 1990) .......... 11

*Crowley v. CyberSource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001) .......... 29

*Dinerstein v. Google LLC*,
73 F.4th 502 (7th Cir. 2023) .......... 8

*Dyer v. Northwest Airlines Corp.*,
334 F. Supp. 2d 1196 (D.N.D. 2004) .......... 18, 29

*Enslin v. The Coca-Cola Co.*,
136 F. Supp. 3d 654 (E.D. Pa. 2015) .......... 22

*Farst v. AutoZone, Inc.*,
700 F. Supp. 3d 222 (M.D. Pa. 2023) .......... 17

*Finkelman v. Nat'l Football League*,
810 F.3d 187 (3d Cir. 2016) .......... 28

*Foster v. United States*,
728 F. Supp. 3d 473 (E.D. Ky. 2024) .......... 12

*Galaria v. Nationwide Mutual Insurance Co.*,
No. 2:13-CV-118, 2017 WL 4918634 (S.D. Ohio Oct. 31, 2017) .......... 23

*Gleason v. Magna Wave, Inc.*,
727 S.W.3d 714 (Ky. App. 2025) .......... 33

*Goldstein v. Costco Wholesale Corp.*,
559 F. Supp. 3d 1318 .......... 27

*Guest v. Leis*,
255 F.3d 325 (6th Cir. 2001) .......... 16

*Hargis v. Baize*,
168 S.W.3d 36 (Ky. 2005) .......... 15

*Holland v. United Services Automobile Association*,
707 S.W.3d 541 (Ky. App. 2025) .......... 23, 24

*In re Arthur J. Gallagher Data Breach Litigation*,
631 F. Supp. 3d 573 (N.D. Ill. 2022) .......... 10

*In re BPS Direct, LLC*,
175 F.4th 423 (3d Cir. 2026) .......... 7

*In re DoubleClick Inc. Privacy Litigation*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)........................................................................ 31

*In re Google Inc. Cookie Placement Consumer Privacy Litigation*,
806 F.3d 125 (3d Cir. 2015)........................................................................... 25, 32

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023)........................................................................ 25

*In re JetBlue Airways Corp. Privacy Litigation*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) ........................................................................ 29

*In re Nickelodeon Consumer Privacy Litigation*,
827 F.3d 262 (3d Cir. 2016)..................................................................................... 17

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012)........................................................................ 22

*In re Zynga*,
750 F.3d 1098ku (9th Cir. 2014) ................................................................................ 27

*Jacome v. Spirit Airlines Inc.*,
No. 2021-000947-CA-01, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021)............................ 4

*James v. Meow Media, Inc.*,
300 F.3d 683 (6th Cir. 2002) ..................................................................................... 12

*Jones v. Hanna*,
814 S.W.2d 287 (Ky. Ct. App. 1991) ........................................................................ 22

*Jones v. Sparks*,
297 S.W.3d 73 (Ky. App. 2009) ................................................................................. 20

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) ......................................................................... 25

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ........................................................................... 4

*Luis v. Zang*,
833 F.3d 619 (6th Cir. 2016) ..................................................................................... 27

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)..................................................................................................... 6

*Martinez v. Mentavi, Inc.*,
2025 WL 3780427 (W.D. Mich. Oct. 9, 2025)................................................................ 3, 25

*Massie v. Gen. Motors LLC*,
No. CV 21-787-RGA, 2022 WL 534468 (D. Del. Feb. 17, 2022) ......................................... 7

*McCall v. Courier-Journal & Louisville Times Co.*,
623 S.W.2d 882 (Ky. 1981) .......... 15

*McGee v. S-L Snacks National*,
982 F.3d 700 (9th Cir. 2020) .......... 10

*McKenzie v. Allconnect, Inc.*,
369 F. Supp. 3d 810 (E.D. Ky. 2019) .......... passim

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) .......... 16

*Neinaber, et al v. Overlake Hospital Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. May 13, 2024) .......... 3

*Pathways, Inc. v. Hammons*,
113 S.W.3d 85 (Ky. 2003) .......... 11

*Patton v. Bickford*,
529 S.W.3d 717 (Ky. 2016) .......... 13, 14

*Pearce v. Whitenack*,
440 S.W.3d 392 (Ky. Ct. App. 2014) .......... 16

*Popa v. Harriet Carter Gifts, Inc.*,
426 F. Supp. 3d 108 (W.D. Pa. 2019) .......... 18

*Rodriguez v. Google, LLC*,
No. 20-CV-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .......... 28

*Sadler v. Advanced Bionics, Inc.*,
929 F. Supp. 2d 670 (W.D. Ky. 2013) .......... 12

*Salazar v. Paramount Global*,
133 F.4th 642 (6th Cir. 2025) .......... 7, 8

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 22

*Silha v. ACT, Inc.*,
807 F.3d 169 (7th Cir. 2015) .......... 10

*Simon v. Eastern Kentucky Welfare Rights Organization*,
426 U.S. 26 (1976) .......... 9

*Sisti v. Bosley Inc.*,
No. 2:25-CV-10669-JFW-DFM, 2026 WL 1223927 (C.D. Cal. Apr. 27, 2026) .......... 28

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 6, 11

*Springer v. Cleveland Clinic Employee Health Plan Total Care*,
900 F.3d 284 (6th Cir. 2018) .......... 10

*Stevens v. TD Bank, N.A.*,
2025 WL 1779164 (2025) .......... 12

*Stith v. Cosmos Broad., Inc.*,
No. 96 CI 00309, 1996 WL 784513 (Ky. Cir. Ct. Sept. 3, 1996) .......... 16

*Stuart v. Kyocera AVX Components Corp.*,
769 F. Supp. 3d 476 (D.S.C. 2025) .......... 10

*Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*,
540 S.W.3d 770 (Ky. 2017) .......... 20

*T & M Jewelry, Inc. v. Hicks ex rel. Hicks*,
189 S.W.3d 526 (Ky. 2006) .......... 15

*Tapply v. Whirlpool Corp.*,
148 F.4th 407 (6th Cir. 2025) .......... 10

*Texas Capital Bank, N.A. v. First American Title Insurance Co.*,
822 F. Supp. 2d 678 (W.D. Ky. 2011) .......... 22

*Torres v. Prudential Financial, Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .......... 28

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 6, 7, 9, 11

*United States v. Meregildo*,
883 F. Supp. 2d 523 (S.D.N.Y. 2012) .......... 16

*United States v. Spence*,
No. 1:07-CR-146, 2008 WL 11417828 (E.D. Tenn. Apr. 22, 2008) .......... 33

*United States v. Szymuszkiewicz*,
622 F.3d 701 (7th Cir. 2010), as amended (Nov. 29, 2010) .......... 28

*University of Kentucky v. Regard*,
670 S.W.3d 903 (Ky. 2023) .......... 18

*Van Buren v. United States*,
593 U.S. 374 (2021) .......... 31

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 4, 27

**Statutes**

18 U.S.C. § 1030(c)(4)(A)(i) .......... 31

18 U.S.C. § 1030(e)(11) ........ 32

18 U.S.C. § 1030(e)(8) ........ 32

18 U.S.C. § 1030(g) ........ 31, 32

18 U.S.C. § 2510(15) ........ 29

18 U.S.C. § 2510(17) ........ 30

18 U.S.C. § 2510(4) ........ 26

18 U.S.C. § 2510(8) ........ 26

18 U.S.C. § 2511(1) ........ 26

18 U.S.C. § 2511(2)(d) ........ 2, 25

18 U.S.C. § 2511(3) ........ 2

18 U.S.C. § 2511(3)(a) ........ 26, 29, 30

18 U.S.C. § 2511(3)(b)(ii) ........ 26

18 U.S.C. § 2702(a)(1) ........ 30

18 U.S.C. § 2702(b)(1) ........ 26

18 U.S.C. § 2702(b)(3) ........ 26

KRS § 365.732 ........ 15

KRS § 367.170 ........ 23

KRS § 367.220(1) ........ 23

KRS § 446.070 ........ 15

KRS § 526.010 ........ 32, 33

KRS § 526.020 ........ 32

**Court Rules**

Fed. R. Civ. P. 12(b)(1) ........ 5, 11, 33

Fed. R. Civ. P. 12(b)(6) ........ 5, 11, 33

## I. **<u>INTRODUCTION</u>**

Plaintiff Jared Johnson's First Amended Class Action Complaint ("FAC") is another in the growing wave of lawsuits seeking to impose extraordinary liability based on the alleged use of commonplace third-party analytics tools on public-facing websites. Here, Johnson attempts to transform Commonwealth Federal Credit Union's ("CCU") alleged use of third-party tracking technology on its public website into twelve causes of action for wiretapping, Stored-Communications Act ("SCA") violations, computer intrusion, invasion of privacy, negligence, breach of contract, unjust enrichment, bailment, and violations of Kentucky law. But the number of claims cannot compensate for the absence of facts supporting them.

All of Johnson's claims arise from the same underlying theory: that third-party tracking technologies implemented on CCU's website allegedly disclosed information concerning users' interactions with CCU's website to Google, Meta and other third parties. The FAC alleges that third parties learned when a user attempted to access an online-banking account, submitted a login form, progressed through account-opening workflows, reached identity verification and Social Security number verification stages, reviewed credit-card products, initiated credit-card applications, and advanced through portions of those applications. It further alleges the disclosure of URLs, page titles, event names, and persistent identifiers. What the FAC does not allege , however, is most telling:

- The FAC does not allege that CCU transmitted or that any third-party received Johnson's password, authentication code, security answer, Social Security number, completed application responses, account balances, transaction histories, loan information, or *any sensitive financial information* entered or reviewed on CCU's website.

- The FAC does not allege that any third-party actually identified Johnson from the allegedly disclosed information. Instead, it repeatedly alleges only that third-parties possess technology capable of identifying users through persistent identifiers and other data.

- The FAC does not identify any advertiser, data broker, social media platform, or other downstream recipient that actually received Johnson's information. Nor does it identify a single advertisement that contained, reflected, or was selected because of information Johnson communicated to CCU.

- The FAC does not allege that anyone actually accessed Johnson's checking account, when the access occurred, how the account was accessed, what information was viewed, what action was taken, or whether any transaction resulted. It does not allege that Google, Meta, an advertiser, a data broker, or any other recipient accessed the account.

The FAC fails for several reasons. *First*, Johnson lacks Article III standing because he does not plausibly allege either a concrete injury or a traceable injury caused by CCU. The FAC alleges that third-parties received information concerning users' interactions with CCU's website, *but it does not plausibly allege that CCU disclosed Johnson's financial information or information he entered on the website*. The FAC alleges that these third-parties possess the technology capable of identifying users, *but it never alleges that any recipient actually identified Johnson*. Moreover, targeted advertisements do not establish that any third-party received confidential information from CCU or that any advertisement resulted from a CCU transmission. CCU's alleged marketing benefit is a claimed gain to CCU, not a loss to Johnson; statutory damages are a requested remedy, not an injury; and Johnson alleges no fraudulent transaction, out-of-pocket expense, lost account funds, impaired credit, or actual misuse of identified information attributable to the challenged tracking.

*Second*, all three ECPA counts fail at the threshold because CCU was both a party to and the intended recipient of the communications at issue. The provisions use different language, but each protects communications from outsiders—not from a party, intended recipient, or authorized agent. Count VIII is barred by the Wiretap Act's party-consent rule, 18 U.S.C. § 2511(2)(d); Count IX does not identify contents divulged by a public electronic communication service while in

transmission and disregards the recipient-and-agent limitations in § 2511(3); and Count X does not identify contents held in statutory electronic storage by such a service and disregards the SCA's recipient, agent, and consent exceptions. The FAC also fails to identify the contents of a particular communication, contemporaneous acquisition of those contents, a public electronic communication service supplied by CCU, or statutory electronic storage.

*Third*, the common-law and Kentucky consumer claims fail because the FAC does not sufficiently plead the conduct, breach, causation, or damages required by those claims. The negligence and contract theories depend on an actual disclosure of protected information and resulting injury, not the mere presence of analytics code. The intrusion claim requires an intentional and highly offensive intrusion of Johnson's private affairs. Unjust enrichment requires a benefit conferred by Johnson and inequitably retained by CCU; bailment requires property delivered for safekeeping and return; and the Kentucky Consumer Protection Act requires an ascertainable loss of money or property caused by the challenged conduct. The FAC's generalized labels and conclusory allegations do not satisfy those distinct requirements.

*Fourth*, the remaining federal and Kentucky statutory claims are inapplicable and insufficiently pled. The Computer Fraud and Abuse Act requires access through a computational gate and a qualifying statutory loss; Johnson alleges neither. Kentucky's eavesdropping statute covers wire or oral communications, not the electronic website activity alleged here, and in any event, has a single-party consent exception that applies here.

*Finally*, courts around the country, including those analyzing the ECPA, have routinely dismissed similar cases, and this Court should follow form. *See, e.g.*, *Martinez v. Mentavi, Inc.*, 2025 WL 3780427 (W.D. Mich. Oct. 9, 2025) (dismissing ECPA claim despite allegations that tracking tools captured and transmitted users' PHI and PII because the website operator was a party to the communications); *Neinaber, et al v. Overlake Hospital Med. Ctr.*, 733 F.Supp.3d 1072

(W.D. Wash. May 13, 2024) (dismissing ECPA claims arising from website tracking because the defendant was a party to the plaintiff's website communications and therefore fell within the statute's one-party consent exception; highlighting the lack of sufficient damages pled and the voluntary nature of plaintiff's conduct as barring plaintiff's claims); *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 61 (W.D. Pa. 2023), *aff'd as modified*, 148 F.4th 153 (3d Cir. 2025) (dismissing Pennsylvania Wiretap Act claim where the alleged mouse movements, clicks, URLs, and unspecified keystrokes did not plausibly constitute the "contents" of communications, and looking to ECPA precedent because the relevant statutory definitions are identical); *Arndt v. Gov't Emps. Ins. Co.*, 750 F. Supp. 3d 518, 528 (D. Md. 2024) (dismissing pixel tracking lawsuit for lack of concrete injury based on defendant's alleged collection of mere website activity, such as mouse movements, keystrokes and clicks, search terms, or content viewed by plaintiff on defendant's website because "[s]uch information does not convey any personal, private, or identifying information" and this information is "comparable to that which would reflect 'public shopping behavior in the real world'"); *Jacome v. Spirit Airlines Inc.*, No. 2021-000947-CA-01, 2021 WL 3087860, at *1 (Fla. Cir. Ct. June 17, 2021) (concluding that plaintiff failed to state a claim under Florida's wiretap statute because session replay software does not constitute an "electronic, mechanical, or other device" within the meaning of the statute); *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 844 (N.D. Ill. 2023) (dismissing healthcare website-tracking ECPA claim because the defendant was a party to the communications and the plaintiff failed to allege either the disclosure of specific individually identifiable health information or any criminal or tortious purpose independent of the alleged interception itself; stating that, "[t]he type of metadata that [plaintiff] alleges was transmitted via third-party source code does not in the least bit fit into [the PHI] category."); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (plaintiff failed to state a claim under California Invasion of Privacy Act because keystrokes,

mouse clicks, pages viewed, and shipping and billing information are not contents of a communication).

Capability is not conduct. Possibility is not fact. And a chain of possibilities is not plausibility. The FAC should be dismissed under Rules 12(b)(1) and 12(b)(6).

## II. STATEMENT OF FACTS

CCU is a Kentucky credit union that provides financial services through a public-facing website, online banking portal, mobile application, and other digital services. *See* FAC¶¶ 2, 17-20, 25-27. Johnson alleges that he maintained an account with CCU and used CCU's online platforms to apply for a loan, pay bills, check an account balance, and obtain other financial services. *See id.* ¶¶ 16, 124-125.

The FAC alleges that CCU embedded various third-party tracking tools on its website, including Google Analytics, Google Tag Manager, DoubleClick, Meta Pixel, Simpli.fi, TV Square, Alphonso, and Datadog. *See id.* ¶¶ 1, 41-42. According to Plaintiff, these technologies transmitted information concerning users' interactions with the website to Google, Meta, TV Square, Alphonso, Datadog, and other advertising, analytics, and tracking companies ("Third Parties"). *See id.* ¶¶ 1, 31-38. Specifically, Plaintiff alleges that the Third Parties received information reflecting when a user attempted to access his or her online-banking account, advanced to a password-entry screen, sought to open a financial account, progressed through identity-verification and Social Security number-verification processes, reviewed a credit-card product, initiated a credit-card or loan application, and advanced through various stages of that application. *See id.* ¶¶ 43-55. Plaintiff further alleges that URLs, page titles, event names, and persistent identifiers, including guest identifiers and device identifiers, were transmitted in connection with those interactions. *See id.* ¶¶ 43-70.

Plaintiff contends that these persistent identifiers may permit third-parties to associate website activity with particular users. *See id.* ¶¶ 56-70. The FAC does not allege, however, that the Third Parties identified Plaintiff, associated any allegedly transmitted information with Plaintiff, or used the information received to access Plaintiff's accounts. Instead, Plaintiff relies on allegations about the ability of the Third Parties to link persistent identifiers to individual users. *See id.* Nor does the FAC allege that any outside party received Plaintiff's password, verification code, account number, account balance, transaction history, completed application responses, Social Security number, or other specific information entered by Johnson into CCU's systems. *See id.* ¶¶ 43-55.

The FAC further alleges that CCU's Privacy Notice, Terms and Conditions, and cookie disclosures did not adequately disclose the challenged tracking practices. *See id.* ¶¶ 80-106. Moreover, Plaintiff alleges that he later received targeted advertisements concerning financial services and products. *See id.* ¶ 126. The FAC does not allege any facts showing that a particular CCU website interaction resulted in a specific advertisement.

## III. ARGUMENT

### A. Johnson Lacks Article III Standing Because He Alleges Neither a Concrete Injury Nor a Plausible Traceable Connection to CCU.

Johnson bears the burden of establishing standing for each claim and each form of relief. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). He therefore must plausibly allege a concrete and particularized injury that is fairly traceable to CCU's challenged conduct. A statutory violation, without resulting concrete harm, is not enough. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Nor may Johnson rely on generalized allegations concerning other customers, hypothetical downstream uses, or injuries that unidentified class members might have suffered. *See TransUnion*, 594 U.S. at 431.

The FAC lists numerous alleged injuries, but labels are not facts. *See* FAC. ¶ 137. Some are not concrete. Others are not plausibly traceable to CCU. None establishes Johnson's standing.

*First*, Johnson does not allege the actual privacy invasion on which his case depends. An actual disclosure of private information or intrusion into private affairs may constitute a concrete intangible injury, but only where the claim is analogous to a historical privacy tort. *See TransUnion*, 594 U.S. at 424-27; *Salazar v. Paramount Global*, 133 F.4th 642, 649-54 (6th Cir. 2025). Calling an event a privacy invasion does not establish that the event occurred. Johnson must still allege facts showing that his private information was actually captured, examined, or disclosed. He does not.

The FAC alleges that the Third Parties received information concerning users' interactions with CCU's website, including online-banking login attempts, progress through account-opening workflows, identity-verification stages, credit card application workflows, URLs, page titles, event names, and persistent identifiers. *See* FAC ¶¶ 43-70. The FAC does not allege that the Third Parties received the information users entered while interacting with those pages and workflows. Indeed, the FAC does not allege that any third-party received Johnson's name, username, password, verification code, Social Security number, completed application responses, account balances, transaction histories, loan information, or other financial information entered into or viewed on CCU's website. Instead, Johnson alleges only that the Third Parties learned that a user reached a particular page or advanced to a particular stage of a process. These allegations are exactly the type of allegations that courts around the country have determined cannot establish standing. *See Massie v. Gen. Motors LLC*, No. CV 21-787-RGA, 2022 WL 534468, at *2 (D. Del. Feb. 17, 2022) (no concrete injury where the information intercepted included mouse movements, clicks, keystrokes, a user's location at the time of visit, browser type, and device's operating system); *Cook v. GameStop*, 148 F.4th 153, 165-69 (3d Cir. 2025) (no concrete privacy injury where the

plaintiff did not allege that the data included her name, contact information, address, or billing information); *In re BPS Direct, LLC*, 175 F.4th 423, 428–33 (3d Cir. 2026) (holding that the interception of mouse movements, clicks, scrolling, text entries, and search terms did not establish a concrete injury because such activity was "no more private than the physical browsing countless shoppers do daily in defendants' brick-and-mortar stores," while distinguishing plaintiffs whose complete credit or debit card information was intercepted). What matters is not that sensitive information existed somewhere on the website, but whether the tracker *actually obtained sensitive information belonging to this plaintiff*.

*Salazar* makes the same point from the opposite direction. There, the complaint identified a discrete disclosure: the defendant allegedly sent the plaintiff's private video-viewing history to Facebook together with his Facebook ID. *See* 133 F.4th at 649-54. Sensitive information and the identifier connecting it to the plaintiff were all alleged. The FAC fails to do that here.

To that end, Johnson also fails to allege that any third-party actually identified Johnson from the intercepted information. The FAC repeatedly alleges that the Third Parties possess technology capable of identifying users, linking persistent identifiers to individuals, and associating across browsing sessions. *See* FAC ¶¶ 43-70. But having the capability does not mean that anyone actually identified Johnson. Nowhere in the FAC does Johnson allege that any third-party actually identified Johnson or associated any allegedly transmitted information to him. Possible future identification is not a present privacy injury. *See Dinerstein v. Google LLC*, 73 F.4th 502, 514-16 (7th Cir. 2023) (holding that plaintiff lacked standing where he alleged that Google received his information but did not allege that Google actually used that information to identify him); *Brahm v. Hospital Sisters Health System*, No. 23-CV-444-WMC, 2026 WL 1194751, at *7-8 (W.D. Wis. May 1, 2026) (concluding that allegations that Google possessed the

capability to identify users from IP addresses, cookies, browser fingerprints, and URLs were insufficient absent allegations that Google actually identified the plaintiffs).

*Second*, the targeted-advertising allegations are not plausibly traceable to CCU's conduct. Johnson alleges only that, after using CCU's online services, he "regularly received targeted advertising on his social media accounts" for banking products and loans. FAC ¶ 126. He does not identify a particular advertisement, the entity that served it, when it appeared, what information it reflected, or any feature suggesting that it resulted from a communication with CCU. Receiving advertisements for financial products after using a financial institution's website does not itself establish either injury or causation.

Chronology is not traceability. The FAC's theory requires multiple unpled events between Johnson's interaction with the CCU Website and an advertisement: a tracker must capture a Johnson-specific communication; a third-party, such as Google, must identify Johnson from it; Google must retain, combine, or disclose the information; another platform or advertiser must receive and use it; and that use must produce the particular advertisement Johnson later sees. The FAC does not allege that any of those events occurred. Nor does it distinguish its theory from obvious alternative explanations such as Johnson's other internet searches, social-media activity, existing credit relationships, demographic targeting, or ordinary audience-based advertising. *See Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976) (finding traceability lacking where it was "purely speculative" whether the alleged injury resulted from the challenged conduct or from independent decisions by third parties).

*Third*, Johnson's noneconomic "harms" do not constitute injury-in-fact. Worry or fear of possible future misuse is insufficient when the threatened harm has not materialized and the FAC alleges no separate present injury caused by exposure to that risk. See *TransUnion*, 594 U.S. at 435-38; *Baysal v. Midvale Indemnity Co.*, 78 F.4th 976, 977-78 (7th Cir. 2023). Johnson also

claims "embarrassment, humiliation, frustration, and emotional distress," but alleges no facts describing that distress, its consequences, or the event that caused it. Even assuming adequately pleaded emotional distress could constitute concrete harm, the Court need not accept an unsupported injury label. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Fourth*, Johnson's economic theories identify no actual economic loss. The asserted loss in the "value" of his information is conclusory because Johnson does not allege that he licensed or attempted to sell the information, lost a sale, or was prevented from participating in a market. Johnson's allegation that he never intended to sell his information underscores the absence of any plausible allegation that CCU's conduct impaired his ability to realize value from that information. *See* FAC ¶ 131. Further, in *In re Arthur J. Gallagher Data Breach Litigation* the Court rejected the proposition that personal information's abstract economic value, standing alone, establishes concrete harm. *See* 631 F. Supp. 3d 573, 592 (N.D. Ill. 2022).

The alleged lost benefit of the bargain fares no better. That theory may support standing when a plaintiff plausibly alleges that he was denied a specific contractual benefit or paid for a product or service worth less than promised. *See Springer v. Cleveland Clinic Employee Health Plan Total Care*, 900 F.3d 284 (6th Cir. 2018); *Tapply v. Whirlpool Corp.*, 148 F.4th 407 (6th Cir. 2025). Johnson alleges that he paid for financial services that included privacy and data-security protections. *See* FAC ¶ 137(d). But he does not identify any fees paid specifically for privacy protections, a price premium attributable to privacy representations, a promised account benefit that CCU withheld, or diminution in the value or functionality of the financial services he received. Courts reject benefit-of-the-bargain standing in the data-privacy context where the plaintiff does not plausibly allege that the purchased goods or services were worth less because of the challenged conduct. *See Stuart v. Kyocera AVX Components Corp.*, 769 F. Supp. 3d 476 (D.S.C. 2025); *McGee v. S-L Snacks National*, 982 F.3d 700 (9th Cir. 2020).

CCU's alleged revenues, marketing savings, or profits likewise cannot establish Johnson's standing because Article III asks what the plaintiff lost, not what the defendant gained. *See Silha v. ACT, Inc.*, 807 F.3d 169, 175 (7th Cir. 2015). Statutory damages are a potential remedy, not a substitute for the concrete injury required to invoke federal jurisdiction. *See TransUnion*, 594 U.S. at 426-27; *Spokeo*, 578 U.S. at 341.

Finally, none of these theories cures the same central defect fatal to this action in general: the FAC does not identify an actual transmission of Johnson's confidential or sensitive information, actual downstream use of that information, or a concrete consequence fairly traceable to CCU. Because Johnson has alleged only a chain of possibilities rather than a concrete injury and plausible causal connection, the FAC should be dismissed under Rule 12(b)(1).

**B. Plaintiff Fails to State a Claim.**

Rule 12(b)(6) requires sufficient factual pleadings to state a facially plausible claim. *See Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The Court accepts well-pleaded facts and reasonable inferences, but not legal conclusions, formulaic elements, or allegations that stop at possibility rather than plausibility. *See Iqbal*, 556 U.S. at 678-79. A claim fails when the pleaded facts do not support a required element. *See Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir. 1990).

**1. Count I Fails Because Johnson Does Not Plausibly Allege Breach, Causation, or Cognizable Injury.**

Kentucky negligence requires duty, breach, causation, and injury. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88-89 (Ky. 2003). As a threshold matter, there should be no duty to "protect" innocuous voluntary interactions with a public website. Regardless, the Court need not decide at this stage the full scope of any duty CCU may owe when handling customer information. Count I fails regardless because the FAC does not plausibly allege any breach, how the alleged conduct caused Johnson's claimed harms, or a cognizable injury resulting from the alleged breach.

Even assuming CCU owed a duty to exercise reasonable care in handling sensitive customer information, that duty would not make every interaction with a website actionable or render the use of analytics technology inherently negligent. Kentucky negligence law asks whether the defendant failed to exercise reasonable care under the circumstances and whether that breach caused a cognizable injury. *See James v. Meow Media, Inc.*, 300 F.3d 683, 689-90 (6th Cir. 2002); *Foster v. United States*, 728 F. Supp. 3d 473 (E.D. Ky. 2024). The FAC therefore must allege facts showing sensitive information was actually transmitted, what act or omission made that transmission unreasonable, and how the alleged breach caused Johnson's injury. *See Stevens v. TD Bank, N.A.*, 2025 WL 1779164 (2025) (dismissing a website-tracking claim where the plaintiff failed to allege that the tracking technology disclosed protected personal information specific to him or that a third-party actually identified him); *McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810 (E.D. Ky. 2019). General references to industry standards and a duty to safeguard data may inform the applicable standard of care, but they do not substitute for factual allegations establishing breach, causation, and injury. *See Sadler v. Advanced Bionics, Inc.*, 929 F. Supp. 2d 670 (W.D. Ky. 2013).

The FAC tries to cast its negligence claim in data breach terms by invoking the familiar language of inadequate safeguards, deficient vendor oversight, and unauthorized disclosure. FAC ¶¶ 196-201. But the facts alleged do not resemble the data breaches addressed in the cases on which that terminology is based. Johnson does not allege that a criminal penetrated CCU's systems, that CCU lost control of stored customer records, that unencrypted data was exfiltrated, or that CCU failed to respond to a known security incident. He alleges instead that CCU placed tracking code on *its own website* and thereby transmitted information concerning users' interactions with the website, including attempts to access online-banking accounts, steps taken to open financial accounts or apply for credit, URLs, page titles, event names, and persistent

identifiers. *See id.* ¶¶ 43-70. Repeatedly characterizing that information as "Personal and Financial Information" does not transform the alleged transmission into the compromise of account credentials or other sensitive records. The FAC does not allege that any third-party received Plaintiff's password, Social Security number, account number, account balance, transaction history, completed application responses, or any other information entered by Plaintiff into CCU's systems. The contrast with *McKenzie v. Allconnect, Inc.* is instructive. There, an employee allegedly collected workers' W-2 information and affirmatively sent it to a phisher, producing an actual unauthorized disclosure of sensitive personal information and causing the plaintiffs to incur time and expense protecting themselves against misuse. *See* 369 F. Supp. 3d 810, 814-20 (E.D. Ky. 2019). Data breach cases do not establish that analytics technology is inherently negligent; they instead underscore what is missing here: a concrete release of sensitive information, an unreasonable security failure, and resulting mitigation costs or other injury.

The breach-of-duty allegations are also too indefinite. Although the FAC identifies certain website activity that was transmitted to third parties, it does not allege that CCU configured its trackers to collect or transmit the actual information entered by users on the website. Nor does it allege that CCU sent credentials or information capable of granting access to Johnson's account. The Court can accept that CCU used third-party tracking tools without accepting the unsupported conclusion that the tools thereby received every item Johnson used on the website.

Causation is also unestablished. Kentucky requires a direct and identifiable nexus between the alleged breach and the injury. *See Patton v. Bickford*, 529 S.W.3d 717, 730-31 (Ky. 2016). The advertising theory depends on several unpled events: a third-party tracker received website activity associated with a particular persistent identifier; the tracker successfully linked that identifier to Johnson;; the entity shared it; an advertiser used it; and the resulting ad appeared on Johnson's social-media account. *See* FAC ¶¶ 43-70. The FAC alleges only that third parties are capable of

linking persistent identifiers to users, not that any third-party actually identified Johnson. *See id.* The account-access theory has an even larger gap because it requires an unidentified actor to obtain an unalleged credential through an unexplained route. A temporal allegation that ads or access occurred after use of CCU's website is not a plausible causal nexus.

Nor can the causation problem be answered simply by characterizing downstream misuse as foreseeable. Foreseeability does not dispense with cause in fact or Kentucky's requirement of a direct and identifiable nexus. *See Patton*, 529 S.W.3d at 730-31. Even if data received by an analytics provider could foreseeably influence advertising, Johnson still must allege that a third party actually identified him and that information allegedly received from CCU was used in selecting or serving a particular advertisement. He does neither. And even if stolen credentials can foreseeably lead to account access, Johnson must allege that CCU's trackers captured or disclosed a credential. The presence of the tracking technologies not categorically fatal; the absence of facts about what any the Third Parties received or did is.

The "injury" allegations also fail to establish damages as discussed above. Johnson alleges no fraudulent charge, lost funds, identity theft, or credit injury. The data-breach plaintiffs in *McKenzie* alleged lost time and money responding to an actual release of W-2 information. 369 F. Supp. 3d at 817-18. Johnson alleges that he incurred time and expense responding to targeted advertisements, but he does not identify any actual expenditure or explain what measures Johnson purportedly took, and therefore, this allegation is conclusory. Further, the FAC lists emotional distress, lost privacy, data value, benefit of the bargain, and future risk, but provides no plausible allegations explaining how Johnson suffered any of these purported injuries as a result of CCU's conduct. FAC ¶¶ 203-204. Even if Kentucky recognizes some nonpecuniary harm after an actual privacy breach, the FAC must first plausibly allege the breach and causal connection. It does not. Count I should be dismissed.

### 2. Count II Fails Because Johnson Does Not Identify a Valid Kentucky Negligence-Per-Se Predicate.

Kentucky's negligence-per-se doctrine is codified in KRS § 446.070. The statute creates a private right of action for the violation of a statute that is penal in nature and provides no civil remedy, provided the plaintiff belongs to the class of persons the statute was intended to protect. *See Hargis v. Baiz*e, 168 S.W.3d 36, 40 (Ky. 2005). The predicate statute must also have been intended to prevent the type of occurrence alleged, and its violation must have been a substantial factor in causing the plaintiff's injury. *See id.* at 45. For purposes of KRS § 446.070, however, "any statute" means a Kentucky statute; federal statutes and regulations cannot supply the predicate. *See T & M Jewelry, Inc. v. Hicks ex rel. Hicks*, 189 S.W.3d 526, 529-30 (Ky. 2006); *Christensen v. ATS, Inc.*, 24 F. Supp. 3d 610, 613 (E.D. Ky. 2014).

Count II rests primarily on the FTC Act, the Gramm-Leach-Bliley Act, and unidentified industry standards. *See* FAC ¶¶ 210. None is a Kentucky statutory predicate under KRS § 446.070. The count's residual reference to "state law" does not identify a statute, a violated provision, a protected class, or a covered injury. To the extent Plaintiff might rely on Kentucky's breach-notification statute, KRS § 365.732, the FAC does not allege a statutory "breach of the security of the system," and the statute exempts financial institutions subject to Title V of the GLBA. *See* KRS § 365.732. In all events, the same causation and injury defects remain. Because none of the statutes or regulations Plaintiff invokes can support negligence per se under Kentucky law, the Court need not examine them one by one. Count II should be dismissed.

### 3. Count III Fails Because Johnson Does Not Plead a Highly Offensive Intrusion into a Matter in Which Plaintiff Had a Reasonable Expectation of Privacy

Kentucky follows the Restatement formulation of intrusion upon seclusion, which provides that a plaintiff must allege an intentional intrusion into a matter he had a right to keep private that would be highly offensive to a reasonable person. *See McCall v. Courier-Journal & Louisville*

*Times Co.*, 623 S.W.2d 882, 887 (Ky. 1981); *McKenzie*, 369 F. Supp. 3d at 819. Accordingly, to prevail on a cause of action for intrusion upon seclusion, a plaintiff must allege the following three elements: "(1) an intrusion by the defendant; (2) into a matter which the plaintiff has a right to keep private; (3) by the use of a method which is objectionable to a reasonable person." *Stith v. Cosmos Broad., Inc.*, No. 96 CI 00309, 1996 WL 784513, at *4 (Ky. Cir. Ct. Sept. 3, 1996).

The FAC's allegations do not meet the second element of that standard because Johnson fails to allege that CCU intruded in a location in which Johnson had a reasonable expectation of privacy. For an intrusion upon seclusion claim to be actionable, "a plaintiff must have a reasonable expectation of privacy in th[e] matter." *Pearce v. Whitenack*, 440 S.W.3d 392, 401 (Ky. Ct. App. 2014). While individuals may have a reasonable expectation of privacy in the contents of their private computers, "this expectation is not absolute, and may be extinguished when a computer user transmits information over the Internet or by e-mail." *United States v. Meregildo*, 883 F. Supp. 2d 523, 525 (S.D.N.Y. 2012) (citing *Guest v. Leis*, 255 F.3d 325, 333 (6th Cir. 2001)); *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 846 (S.D. Cal. 2024) (declining to find a privacy interest in plaintiffs' interactions with defendants' website). In *Pearce*, the Court of Appeals determined that the plaintiff did not have a reasonable expectation of privacy with respect to a Facebook post, noting that, with internet communications, a plaintiff runs the risk that a communication will be disseminated beyond its intended recipient. *See* 440 S.W.3d at 401. Like *Pearce*, Johnson has not plausibly alleged a reasonable expectation of privacy in the information allegedly transmitted through his interactions with CCU's website.

Even if Johnson alleged a reasonable expectation of privacy on CCU's website, the FAC still fails to allege conduct that would be highly offensive to a reasonable person. Johnson alleges that the third-party tracking code disclosed information revealing that a user attempted to access an online-banking account, submitted a login form, advanced to a password entry screen, reached

pages requesting identity verification or Social Security number verification, reviewed credit card products, initiated a credit card application, and advanced through various stages of that application, along with page views, URLs, event names, and persistent identifiers. *See* FAC ¶¶ 43-70. The FAC does not allege that the trackers captured anything a user entered on website, including their password, Social Security number, verification code, or application responses, full account or card number, the amount of his or her balance, the substance of a payment instruction, or other private information.

Courts analyzing website-tracking claims have consistently held that the collection of website-interaction data and persistent identifiers, such as is alleged here, is not highly objectionable to support an intrusion upon seclusion claim. *See In re Nickelodeon Consumer Privacy* Litigation, 827 F.3d 262, 293-95 (3d Cir. 2016) (finding that tracking through cookies and persistent identifiers, even on a child-directed site, was not sufficiently offensive to sustain an intrusion claim); *Farst v. AutoZone, Inc*., 700 F. Supp. 3d 222, 229 (M.D. Pa. 2023) (determining that the alleged recording of plaintiff's mouse clicks, keystrokes, search terms, page views, scroll movements, and copy-and-paste actions while browsing defendant's website which revealed plaintiff's shopping preferences was not the type of highly offensive conduct necessary to support a claim for intrusion upon seclusion); *Cobbs v. PetMed Express, Inc.*, No. 25-8045-CIV, 2026 WL 905375, at *11 (S.D. Fla. Jan. 14, 2026) (concluding that collection of pet-related information, keystrokes, links, and form entries through cookies on a commercial website was not highly offensive to support an intrusion upon seclusion claim because such tracking is widespread and does not resemble the invasions of privacy historically recognized at common law); *Cook v. GameStop, Inc.*, 689 F. Supp. at 61 (concluding plaintiff failed to state a claim for intrusion upon seclusion because disclosure of plaintiff's website activity, including the products she browsed and added to her cart, does not constitute highly objectionable conduct needed to state a claim);

*Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 122–23 (W.D. Pa. 2019) (holding that collection of plaintiff's keystrokes, mouse clicks, name, residential address, and email address through website tracking technology was not sufficiently highly offensive to state a claim for intrusion upon seclusion).

Because the FAC does not identify an actual intrusion into a private place which is highly objectionable, the third cause of action should be dismissed.

**4. Count IV Fails Because Johnson Does Not Plead an Enforceable Promise, Breach, or Resulting Contract Loss.**

A Kentucky breach-of-contract claim requires a valid contract, breach, and damages caused by the breach. *See Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. App. 2007). Whether framed as express or implied, the claim must identify mutual assent to a sufficiently definite obligation. An implied-in-fact contract arises from conduct showing a tacit understanding, not from one party's uncommunicated expectation. *See McKenzie*, 369 F. Supp. 3d at 820.

The express-contract theory begins with the assertion that CCU's contracts with its customers include its Privacy Notice and Terms and Conditions, which are "maintained" on its website. *See* FAC ¶ 83. But the FAC does not allege that Johnson clicked to accept those documents, that they were presented when he opened or used his account, that he read or relied on them when undertaking a transaction, or that another agreement he agreed to incorporated them. A document can be incorporated into an online agreement when the parties objectively assent and the incorporated terms are adequately identified and provided. *See University of Kentucky v. Regard*, 670 S.W.3d 903, 910-14 (Ky. 2023). The bare fact that a policy was posted or maintained on a website does not allege those circumstances. *See Dyer v. Northwest Airlines Corp.*, 334 F. Supp. 2d 1196, 1199-1200 (D.N.D. 2004) (dismissing a contract claim based on a website privacy policy because broad statements of company policy generally do not create contractual obligations,

the plaintiffs did not allege that they accessed, read, understood, relied upon, or otherwise considered the policy, and they failed to allege contractual damages).

The FAC also does not plausibly establish the specific promise Count IV asserts. CCU did not promise that a service provider would never receive website interaction data. CCU's statement that it maintains account confidentiality "in accordance with" its privacy policy points to the policy's terms; it does not amount to an unconditional promise that CCU will not disclose to a service provider website interaction data. *See* FAC ¶ 85. The mobile-banking provision addresses only what information CCU collects to perform a customer's requested transactions. It does not promise that website interaction data will never be transmitted to a service provider. *See id.* ¶ 84. And the Privacy Notice statements about not sharing for specified affiliate or nonaffiliate marketing purposes do not, without more, promise that CCU will never use analytics or tracking providers. *See Id.* ¶ 87.

The provisions also address different subjects. A statement about collecting information necessary for a requested mobile-banking transaction does not govern the alleged transmission of information concerning user's interactions with the public facing website. And the Privacy Notice's statements about specified affiliate and nonaffiliate marketing practices do not amount to an unqualified promise that no vendor will receive any website event for analytics or service operations. Further, the FAC does not plausibly allege that any information was, in fact, used for advertising purposes. To plead breach, Johnson must connect an identified transmission to a definite term: for example, account information disclosed for a prohibited nonaffiliate marketing purpose. The FAC instead moves from the policy language to the conclusion that any alleged transmission to the Third Parties violated every quoted promise.

Even if one of those provisions were enforceable, the FAC does not plausibly allege a breach as to Johnson. The FAC does not identify a particular communication from Johnson that was disclosed for a prohibited purpose.

The implied-contract theory has the same problem. In *McKenzie*, employees alleged that they were required to provide W-2 information as a condition of employment, supporting an inference that the employer tacitly agreed to safeguard that specific information; they also alleged its actual release. *See* 369 F. Supp. 3d at 820-21. The FAC does not identify any specific implied terms of any contract with sufficient precision that would apply here. It conflates an expectation by Johnson that sensitive information would be protected as an agreement barring any third-party analytics or tracking on any page, regardless of the information transmitted. It does not allege facts showing that CCU manifested assent to that sweeping term.

Finally, the FAC does not identify a price premium, reduced account value, fee paid specifically for a promised tracking-free service, or other contract loss required to establish damages. The FAC's allegations that Johnson "would have paid less," and lost the benefit of his bargain, or suffered diminution in value are conclusory and unsupported by a transaction or amount. *See* FAC ¶ 238. Although alleging contract damages would not cure the more fundamental absence of formation and breach, the FAC does not do so. Count IV should be dismissed.

**5. Count V Fails Because Johnson Does Not Allege a Benefit He Directly Conferred on CCU.**

Unjust enrichment requires a benefit conferred on the defendant at the plaintiff's expense, the defendant's appreciation of that benefit, and inequitable retention without payment for its value. *See Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. App. 2009); *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 778 (Ky. 2017). The plaintiff must allege a benefit he directly conferred; it is not enough to say that the defendant benefited itself. *See Commonwealth of Kentucky v. Marathon Petroleum Co., LP*, 191 F. Supp. 3d 694, 706 (W.D. Ky. 2016).

Johnson's unjust enrichment claim fails because the allegations underlying this claim are conclusory and cannot support a claim for unjust enrichment. The FAC alleges that CCU used Johnson's information for its own gain through marketing or the sale or trade of Johnson's information to third parties. *See* FAC ¶ 243-249. But those allegations are entirely conclusory. The FAC does not identify any sale or exchange, any purchaser, any revenue derived from Johnson's information, or any marketing campaign that used Johnson's information.

Moreover, to the extent Johnson alleges that CCU benefitted through improved marketing practices, that theory is insufficient under Kentucky law. In *Marathon*, the Commonwealth, on behalf of consumers, alleged that Marathon was unjustly enriched because its alleged monopoly allowed Marathon to charge anticompetitive gasoline prices, retailers purchased gasoline from Marathon, consumers paid those retailers, and Marathon ultimately profited. *See Marathon*, 191 F. Supp. 3d at 706. The Court dismissed the unjust enrichment claim because the alleged benefit from consumers reached Marathon only indirectly through intermediary retailers rather than being directly conferred by consumers. *See id.* Likewise, Plaintiff's theory depends on multiple intervening steps between the alleged disclosure of Johnson's information and any eventual benefit to CCU, including transmission through third-party trackers, analysis of Johnson's information, generation of marketing insights, use of those marketing insights into marketing campaigns, and Johnson purchasing a product or service from CCU. The FAC does not even allege that Johnson ever purchased a product or service from CCU because of such marketing.

In addition, to the extent Plaintiff's theory of unjust enrichment is that the Third Parties derived value from Johnson's information, the claim likewise fails because any such benefit would've been conferred upon those third parties—not CCU. For these reasons, this Court should dismiss Johnson's fifth cause of action.

**6. Count VI Fails Because Johnson Did Not Deliver Property to CCU for Safekeeping and Return.**

Under Kentucky law, bailment requires delivery of personal property to another in trust for a specific purpose, under an express or implied agreement that the property will be returned or duly accounted for when that purpose is accomplished. *See Jones v. Hanna*, 814 S.W.2d 287, 289 (Ky. Ct. App. 1991); see *Texas Capital Bank, N.A. v. First American Title Insurance Co.*, 822 F. Supp. 2d 678, 686-87 (W.D. Ky. 2011) (quoting *Jones* and applying that definition to find a constructive bailment). Johnson's bailment claim fails at the outset because information concerning Johnson's interactions with the website do not constitute personal property. While Kentucky courts have not yet addressed this particular issue, a number of federal courts have determined that electronic information cannot constitute personal property. *See, for e.g.*, *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1052 (N.D. Cal. 2025) (dismissing bailment claim because plaintiff's personal information, including *inter alia* her browsing activities on defendant's website does not constitute personal property for purposes of bailment); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 974 (S.D. Cal. 2012) (plaintiff's personally identifying information, such as her login credentials and credit and debit card information, are not personal property); *Enslin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654, 679 (E.D. Pa. 2015) (same). Even if Johnson's information could be considered personal property, Johnson does not allege that he transferred exclusive possession of his information, lost the ability to use it, or expected the same information to be returned.

Moreover, the FAC does not plead the custodial and return-oriented features of a bailment relationship. Johnson does not allege an agreement that CCU would return, delete, or surrender his information when a transaction ended, or that CCU failed to do so on demand. Count VI's statement that CCU was to "account for" the information merely repeats a bailment term; it does not identify an agreement to return, delete, or surrender any property. *See* FAC ¶¶ 252. Nor does

Johnson allege loss or damage to an item entrusted for safekeeping. The same information remained available to him. Even under an assumption favorable to Plaintiff about digital property, those facts do not describe a bailment.

Courts applying bailment principles to data have dismissed claims for that reason. On remand, following the Sixth Circuit's standing decision, the district court in *Galaria v. Nationwide Mutual Insurance Co.*, dismissed a bailment claim because the plaintiffs retained and continued using their identifiers, had not transferred custody or control, and could not plausibly allege an agreement requiring the data's return. *See* No. 2:13-CV-118, 2017 WL 4918634, at *13-14 (S.D. Ohio Oct. 31, 2017). For these same reasons, Count VI should be dismissed.

**7. Count VII Fails Because Johnson Does Not Allege an Ascertainable KCPA Loss Caused by the Challenged Practice.**

The Kentucky Consumer Protection Act prohibits unfair, false, misleading, or deceptive practices in trade or commerce, but its private remedy is limited. A consumer must have purchased or leased goods or services primarily for personal, family, or household purposes and "thereby" suffered an ascertainable loss of money or property from the challenged practice. *See* KRS §§ 367.170, 367.220(1). The loss must have a causal nexus to the alleged conduct. *See Holland v. United Services Automobile Association*, 707 S.W.3d 541, 549-53 (Ky. App. 2025).

Even if Johnson obtained a covered service and adequately alleged a deceptive omission, he does not identify an ascertainable loss. He does not allege he suffered an overcharge, lost funds, was denied service, experienced account impairment, or paid for a representation that the website did not use analytics. The diminished value of his information, lost privacy, CCU's alleged gain, and a generalized lost benefit of the bargain are not facts identifying money or property Johnson lost. *See* FAC ¶¶ 269-276. Nor does the FAC tie a particular statement Johnson saw to a transaction he would have declined or undertaken on different economic terms. Because Count VII lacks a measurable loss caused by the alleged practice, it should be dismissed.

The KCPA's private remedy is not a means to enforce every allegedly unfair practice in the abstract. *Holland* requires an ascertainable loss connected to the challenged act. *See* 707 S.W.3d at 549-53. Thus, even if the alleged omission could qualify as deceptive (which it is not) and even if Johnson purchased something (and there are no allegations at all that he purchased or leased anything), the FAC must still identify an economic consequence to him. It does not allege that an account fee, interest rate, loan term, or service charge changed; that he paid a premium for a website represented to be free of analytics; or that he lost funds because of a transaction induced by a specific statement. General loss of confidentiality and CCU's alleged gain do not identify money or property Johnson lost.

**8. Counts VIII Through X Fail Because the Alleged Communications Were Directed to a Consenting Party and Each Count Omits Facts Necessary to Establish the Statutory Elements.**

Plaintiff divides his ECPA theory into three counts: interception under the Wiretap Act, divulgence by an electronic communication service provider while a communication is in transmission, and disclosure by such a provider while a communication is in electronic storage. The provisions have different elements, but the FAC treats the statutory vocabulary as interchangeable. It repeatedly calls the same website interaction information "contents," CCU an "electronic communication service," and the alleged acquisition both an interception in transit and a disclosure from storage. Facts, not labels, must place the alleged conduct within each provision.

a. <u>The Same Party-and-Consent Exception and Premise Defeats All Three ECPA Counts.</u>

The FAC's three ECPA theories invoke different prohibitions, but each fails for the same reason: CCU was a party to and the intended recipient of Johnson's communications through the website. Indeed, Johnson alleges that CCU was "the entity with which [he] intended to interact." FAC ¶ 34. As the intended recipient of those communications, CCU cannot be held liable for the interception of Johnson's communications under the ECPA.

§ 2511(2)(d), which applies to Count VIII, provides that an interception is not unlawful when the person is a party to the communication or one party has given prior consent, unless the interception is for the purpose of committing an independent criminal or tortious act. Johnson alleges that he communicated through CCU's website to obtain services from CCU and that CCU was the entity with which he intended to interact. *See* FAC ¶¶ 34, 125. As a party to the communications and the intended recipient, CCU cannot be liable for intercepting Johnson's communications. *See Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 938 (N.D. Ill. 2023) (rejecting ECPA claim where plaintiffs alleged that tracking technologies disclosed information to Facebook, Google, and Bidtellect because defendant was the intended recipient of communications sent through its website and patient portal); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) (holding that defendant could not be liable under the ECPA where it was "the party that was meant to, and did receive Plaintiffs' communications on the Website"); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 718 (D. Minn. 2023) (same).

The crime-or-tort proviso does not change that result. For the crime tort exception to apply, the interception must have been made for the purpose of facilitating a criminal or tortious act independent of the interception itself. *See In re Google Cookie Placement*, 806 F.3d at 145-46; *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010); *Bowens v. Aftermath Entertainment*, 254 F. Supp. 2d 629, 642 (E.D. Mich. 2003). In *Martinez v. Mentavi*, the plaintiff alleged that an online healthcare provider configured Meta Pixel, Google Analytics, and other tracking technologies to transmit users' health information to third-parties to promote its business and increase its revenue and profits. *See* No. 1:25-CV-228, 2025 WL 3780427 (W.D. Mich. Oct. 9, 2025). The court determined that the crime-tort exception did not apply because the complaint's allegations showed that the defendant collected this data for its own commercial purposes, not to commit a crime or tort. Here, the FAC alleges that CCU deployed the alleged tracking technologies for analytics,

marketing, cost savings, and to earn a profit. *See* FAC ¶¶ 5,29, 291-292. Like *Martinez*, CCU's business objectives are not a crime or tort, and therefore the crime-or-tort proviso does not apply.

Counts IX and X contain their own recipient, agent, and consent limitations. Section 2511(3)(a) excludes a communication made to the provider or its agent, and § 2511(3)(b)(ii) permits divulgence with the lawful consent of an originator, addressee, or intended recipient. Likewise, the SCA permits disclosure to an addressee, intended recipient, or that recipient's agent, 18 U.S.C. § 2702(b)(1), and with the lawful consent of the originator, addressee, or intended recipient, *id.* § 2702(b)(3). On the FAC's own allegations, CCU was the addressee and intended recipient and allegedly authorized the challenged configuration. Thus, even before the independent threshold defects discussed below, the FAC does not allege an unauthorized disclosure to an outsider within any of the three provisions.

b. <u>The Federal Wiretapping Claims All Fail Because Johnson Does Not Identify Protected Contents or a Contemporaneous Acquisition.</u>

Johnson fails to allege a wiretap claim because he does not plausibly allege an interception of the "contents" of any communication. Section 2511(1) prohibits specified intentional interceptions, uses, and disclosures of wire, oral, or electronic communications. "Intercept" means an acquisition of a communication's "contents" through an electronic, mechanical, or other device, and "contents" means information concerning a communication's substance, purport, or meaning. *See* 18 U.S.C. §§ 2510(4), (8), 2511(1). The statute does not cover every piece of information generated when a user visits a website. Rather, courts distinguish between the contents of a communication and non-content record information. Pages views, webpage addresses, clicks, mouse movements, IP addresses, browser information, and automatically generated events ordinarily constitute record information because they reflect how a user navigates a website rather than the substance, purport, or meaning of a communication. *See e.g.*, *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 61 (W.D. Pa. 2023), *aff'd as modified*, 148 F.4th 153 (3d Cir. 2025) (dismissing

plaintiff's claim under state wiretap act because plaintiff's mouse movements, clicks, URLs, and unspecified keystrokes were not "contents" of a communication); *In re Zynga*, 750 F.3d 1098, 1107 (9th Cir. 2014) (determining that the address of a webpage a user views does not fall within the definition of contents); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (concluding that the recording of mouse clicks, pages viewed, shipping and billing information, IP address, browser type, and the date and time of a user's visit do not constitute contents); *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1320-1231 (mouse movements, clicks, and pages and content viewed while on defendant's website "do not convey the substance of any communication.")

Johnson does not plausibly allege the interception of the contents of any communication. The FAC alleges that the Third Parties received information reflecting users' interactions with CCU's website, including URLs, page titles, event names, guest identifiers, device identifiers, and information concerning users' progression through online-banking and account-opening workflows. *See* FAC ¶¶ 43-70. The FAC does not allege that any third-party received information users submitted as part of this process, such as their username, password, or Social Security numbers. Rather, Johnson alleges only that the Third Parties received information showing how a user navigated through a website, which is precisely the type of information courts have held constitute non-content record information rather than the contents of a communication.

The FAC also fails to plausibly allege that any communication was intercepted while in transit. Under Sixth Circuit law, interception requires acquisition while a communication is in flight. *Luis v. Zang*, 833 F.3d 619, 627-29 (6th Cir. 2016). Although the FAC repeatedly alleges that information was acquired "instantaneously" or "contemporaneously," those are just legal conclusions. *See* FAC ¶¶ 32-26. The FAC alleges that CCU embedded tracking technologies on its website and that those technologies could cause users' browsers to communicate with third

parties. *See id.* From those general allegations, Johnson jumps to the conclusion that every resulting acquisition occurred while a communication was in transit. But just "'[u]sing the word 'intercept' repeatedly is simply not enough without the addition of facts that make it plausible [Defendants are] intercepting [Plaintiff's] data in transit." *Rodriguez v. Google, LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022); *see also*, *United States v. Szymuszkiewicz*, 622 F.3d 701, 703 (7th Cir. 2010), as amended (Nov. 29, 2010) (interpreting the analogous "contemporaneous interception" requirement in the federal wiretapping act to require that something be intercepted "in flight"); *Sisti v. Bosley Inc.*, No. 2:25-CV-10669-JFW-DFM, 2026 WL 1223927, at *6 (C.D. Cal. Apr. 27, 2026) (dismissing federal and state wiretapping claims for failure to allege sufficient facts demonstrating interception while information in transit); *Adler v. Community.com*, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021) (dismissing a wiretap claim because plaintiff did not state a "plausible allegation that Defendant acted to learn the contents of the message while they were, in a technical sense, in transit or in the process of being received"); *Torres v. Prudential Financial, Inc.*, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (dismissing wiretapping claim for failure to sufficiently allege how third parties could have intercepted and read the contents of communications while they were still in transit). Conclusory allegations regarding this "interception" element, like those Johnson makes here, fail to meet the standard that "all aspects of a complaint must rest on 'well-pleaded factual allegations' and not 'mere conclusory statements'." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009)). Even if the Court were to include that the FAC plausibly alleges contemporaneous acquisition, Johnson's wiretap claims still fail because Johnson does not plausibly allege the interception of the contents of any communication and, in any event, CCU was a party to the alleged communications.

c. Count IX Independently Fails Because CCU Is Not a Public Electronic Communication Service Provider and No Contents Were Divulged While in Transmission.

Section 2511(3)(a) applies to a person or entity "providing an electronic communication service to the public" and restricts that provider's divulgence of contents while a communication is in transmission on the service. An electronic communication service ("ECS") is a service that provides users the ability to send or receive wire or electronic communications. *See* 18 U.S.C. §§ 2510(15), 2511(3)(a).

CCU is alleged to provide credit-union and financial services, not internet access, email, messaging, or another communication service to the public. *See* FAC¶¶ 2, 17, 19. Courts consistently distinguish companies that furnish communications services from ordinary businesses that merely operate interactive websites. *See Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1270-71 (N.D. Cal. 2001) (online retailer was not an ECS provider); *In re JetBlue Airways Corp. Privacy Litigation*, 379 F. Supp. 2d 299, 307-08 (E.D.N.Y. 2005) (holding that an airline's online reservation website did not make it an ECS provider because the airline supplied air-travel services, not internet access, and merely used the website to communicate with customers); *Dyer v. Northwest Airlines Corp.*, 334 F. Supp. 2d 1196, 1199-1201 (D.N.D. 2004). Allowing customers to submit information through a website or portal does not transform the underlying financial service into a public electronic communication service.

The ECS definition is functional, but it is not limitless. Nearly every modern commercial website allows users to send requests and receive data. The cited cases ask whether the service the defendant furnishes to the public is the ability to send or receive communications, as with email, messaging, or network access, rather than whether electronic communications happen to be used to deliver the defendant's underlying product. *See Crowley*, 166 F. Supp. 2d at 1270-71; *In re JetBlue*, 379 F. Supp. 2d at 307-08; *Dyer*, 334 F. Supp. 2d at 1199-1201. CCU's alleged service is

financial in nature: accounts, loans, payments, and related banking functions. The website is a means of providing those services, not a public electronic-communication service in its own right.

Count IX also fails because CCU is not alleged to have divulged the contents of any communication "while in transmission on that service." Further, to the extent CCU could even be deemed a provider of an electronic communication service, Section 2511(3)(a) expressly excludes communications made to the provider or its agent. Johnson alleges that users communicated with CCU through CCU's website to obtain CCU's financial services. Thus, even assuming CCU were an ECS provider, the communications at issue were directed to the provider itself. Because CCU is not plausibly alleged to be an ECS provider and no particular protected content is alleged to have been divulged in transmission by such a service, Count IX fails as well.

d. Count X Independently Fails Because CCU Is Not a Public Electronic Communication Service Provider and No Contents Were Held in Electronic Storage.

The Stored Communications Act claim is narrower still. Section 2702(a)(1) restricts an ECS provider's knowing divulgence of a communication's contents "while in electronic storage by that service." "Electronic storage" is a term of art, not a synonym for information that is saved somewhere. The statute identifies temporary, intermediate storage incidental to transmission and storage maintained for backup protection. *See* 18 U.S.C. § 2510(17). Count X does not allege either form. It does not identify a message awaiting delivery, a backup copy maintained by a communications provider, or any provider-side storage arrangement. Its allegation that communications were "immediately placed into storage" simply repeats the statutory conclusion without the facts that would make the storage covered.

As described above, the FAC does not plausibly allege that CCU provides an ECS to the public. It also likewise not allege facts showing that any identified Johnson communication was held in the statutory form of storage by that service. Count X states that communications were "immediately placed into storage" on CCU's website or associated files. *See* FAC ¶¶ 313-315. But

those allegations do not identify where the communication was stored, whether the storage was temporary and incidental to the transmission or maintained for backup protection, or how CCU allegedly divulged the communication from such storage.

Cookies or files on a user's own device do not supply the missing provider-side electronic storage. In *re DoubleClick Inc.* Privacy Litigation, interpreting the same statutory definition, held that cookies residing on user hard drives for an indefinite period were not in "electronic storage." 154 F. Supp. 2d 497, 511-12 (S.D.N.Y. 2001). The FAC's references to browsers, cookies, and files therefore do not state a claim. And, as with Counts VIII and IX, the Complaint fails to identify the contents of a particular stored communication. Count X should be dismissed.

**9. Count XI Fails Because No Computational Gate Was Bypassed and No Qualifying CFAA Loss Is Alleged.**

The CFAA targets digital trespass, not every allegedly unauthorized use or disclosure of information. A person "exceeds authorized access" only by obtaining information from an area of a computer—such as a file, folder, or database—that the person is not permitted to access. *Van Buren v. United States*, 593 U.S. 374, 389-96 (2021). The Sixth Circuit applies that "gates-up-or-down" inquiry and holds that an improper purpose does not turn otherwise permitted access into a CFAA violation. *See Abu v. Dickson*, 107 F.4th 508, 516-20 (6th Cir. 2024).

The FAC identifies no off-limits area of Johnson's computer or device that CCU entered. It alleges no password bypass, technical circumvention, malware, or access to a protected file. Rather, it alleges that code loaded when Johnson voluntarily visited CCU's website and transmitted website events. *See*FAC. ¶¶ 31-36. The allegations concern purpose and data handling, not access through a closed computational gate.

A civil CFAA claim also requires one of the aggravating factors in § 1030(c)(4)(A)(i), such as at least $5,000 in statutory "loss" during a one-year period. 18 U.S.C. § 1030(g). "Loss" concerns reasonable response and restoration costs or revenue lost from interruption of service;

"damage" concerns impairment to data or a system. *Id.* § 1030(e)(8), (11). Johnson alleges no response or restoration costs, service interruption, or system impairment. "Loss" encompasses reasonable costs of responding to an offense, conducting a damage assessment, or restoring affected data or systems, as well as revenue loss or other consequential damages caused by an interruption of service; "damage" means impairment to the integrity or availability of data or a system. 18 U.S.C. § 1030(e)(8), (11). Johnson does not allege any interruption of service, resulting revenue loss, or the impartment to the integrity or availability or data or a system. Instead, he alleges the disclosure of information, targeted advertising, diminished value of information, and lost time and money alleged incurred to mitigate and remediate the effects of targeted advertisemetns. Such allegations do not constutte CFAA loss. *See In re Google Inc. Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125, 148-49 (3d Cir. 2015) (holding that allegations that internet usage information had market value did not establish CFAA loss). The assertion that the alleged disclosure threatened public health or safety merely repeats statutory language and identifies no affected health, safety, or critical system. Compl. ¶ 286. Count XI should be dismissed.

**10. Count XII Fails Because Johnson Alleges Only Electronic Website Activity and CCU Was a Consenting Party.**

Kentucky defines "eavesdrop" as using a device to overhear, record, amplify, or transmit part of a "wire or oral communication" of others without the consent of at least one party. KRS §§ 526.010, 526.020. Unlike the federal statute, Chapter 526 does not separately list "electronic communications." Count XII repeatedly alleges acquisition of "private electronic communications" through source code, browsers, cookies, trackers, and servers. *See* FAC. ¶¶ 335, 344. It does not identify an oral communication or plead facts explaining how a particular website event constitutes a covered wire communication under the Kentucky provision. The Court need not hold that internet data can never fall within Chapter 526; it need only enforce the requirement

that Plaintiff plead the statutory category he invokes. A list of electronic components and the label "private conversation" do not do so.

The claim also fails under the statute's one-party-consent rule. The absence of consent from "at least one" party is part of the definition. KRS § 526.010. Johnson alleges communications directed to CCU through CCU's own website. CCU was therefore a party and, under Plaintiff's theory, authorized the configuration at issue. Kentucky permits recording when one party consents. See *Gleason v. Magna Wave, Inc.*, 727 S.W.3d 714 (Ky. App. 2025).

Plaintiff's citation to *United States v. Spence* does not expand the statutory text. That decision observed that federal law sets a floor for state wiretap restrictions. No. 1:07-CR-146, 2008 WL 11417828, at *15 (E.D. Tenn. Apr. 22, 2008). It did not rewrite KRS § 526.010 to add a separate electronic-communications category or eliminate one-party consent.

Finally, Chapter 526 is a criminal code provision and supplies no express civil action or statutory-damages remedy. For the covered-communication and consent reasons above, Count XII should be dismissed.

## IV. CONCLUSION

Johnson lacks Article III standing, and has otherwise failed to sufficiently plead threshold elements of each count of his Complaint. CCU respectfully requests that the Court dismiss the FAC under Rules 12(b)(1) and 12(b)(6).

Respectfully submitted,

***/s/ John D. "Chip" Clay***

John D. "Chip" Clay
Justin Holmes*
Alexandra Sandler*
**GRSM50**
325 West Main Street, Suite 2300
Louisville, KY 40202
(502) 371-1254

cclay@grsm.com
jholmes@grsm.com
mvrodriguez@grsm.com

**Pro hac vice forthcoming.*